UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
James Saint-Amour and Alena Ivleva a/k/a
Jerrra Blues, d/b/a Satorii,
on behalf of themselves and all others
similarly situated,

                   Plaintiffs,            16 Civ. 4464 (DAB)
                                         __MEMORANDUM & ORDER__

            v.


The Richmond Organization, Inc.
and Ludlow Music, Inc.,


                   Defendants.
-----------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Plaintiffs James Saint-Amour ("Saint-Amour") and Alena

Ivleva a/k/a Jerrra Blues, doing business as Satorii, bring this

class action on behalf of themselves and all others similarly

situated (collectively, "Plaintiffs") against Defendants The

Richmond Organization, Inc. ("TRO") and Ludlow Music, Inc.

("Ludlow") (collectively, "Defendants"). Plaintiffs challenge

Defendants' protectable copyright interest in the American folk

song "This Land is Your Land" (the "Song" or "This Land").[1]

Plaintiffs seek a declaratory judgment that Defendants'

copyright of the Song is invalid and that the Song is in the

public domain. They also seek injunctive relief and damages

---

[1] In their Complaint, Plaintiffs include three different versions of lyrics to
the Song ("1940 Lyrics," "1945 Lyrics," and "1951, 1956, & 1961 Lyrics.")
However, Plaintiffs do not distinguish between these variations and refer to
all versions as the "Song."

pursuant to various claims under federal copyright law and New York state law.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Class Action Complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 17.) For the following reasoning, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.   BACKGROUND

### a. Factual Background

The following facts are drawn from the Complaint (ECF No. 6) and are assumed true for purposes of the instant Motion. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).

### i. Origins of the Song

According to Plaintiffs, the melody of This Land is substantially identical to that of a Baptist gospel hymn from the late 19th or early 20th century, which has been known by various names, including "Fire Song." (Id. ¶¶ 10; 19.) In 1940, the American folk singer Woody Guthrie ("Guthrie") heard "Fire Song," or some variation of it, and copied the melody for use

with his own original lyrics. (Id. ¶¶ 19-22.) The lyrics Guthrie

wrote in 1940 were as follows:

> This land is your land, this land is my land
> From California to the New York Island,
> From the Redwood Forest, to the Gulf stream waters,
> This land was made for you and me.
>
> As I went walking that ribbon of highway
> And saw above me that endless skyway,
> And saw below me the golden valley, I said:
> This land was made for you and me.
>
> I roamed and rambled and followed my footsteps
> To the sparkling sands of her diamond deserts,
> And all around me, a voice was sounding:
> This land was made for you and me.
>
> Was a high wall there that tried to stop me
> A sign was painted said: Private Property,
> But on the back side it didn't say nothing –
> This land was made for you and me.
>
> When the sun come shining, then I was strolling
> In wheat fields waving and dust clouds rolling;
> The voice was chanting as the fog was lifting:
> This land was made for you and me.
>
> One bright sunny morning in the shadow of the steeple
> By the Relief Office I saw my people –
> As they stood hungry, I stood there wondering if
> This land was made for you and me.

("1940 Lyrics")(Id. ¶ 22.)  However, Guthrie did not publish the

Song until 1945.[2]

---

[2] The Court notes that the 1940 Lyrics differ significantly from the lyrics
that Plaintiffs claim Guthrie published in 1945, 1951, 1956, and 1961. For
example, the fourth and sixth verse from the 1940 Lyrics are absent in
subsequent iterations. In the 1945 Lyrics, there are changes to every verse
compared to the 1940 Lyrics, and the fifth verse in the 1945 Lyrics is almost
entirely new. However, Plaintiffs do not explain these variations.

ii. Disputed Copyright Claims

In April, 1944, Guthrie recorded This Land for Moses Asch, the owner of Folkways Records. (Id. ¶ 23.) In 1945, Guthrie wrote and published a songbook entitled "Ten 10 of Woody Guthrie's Songs Book One," ("10 Songs") (Id. ¶ 24.) Guthrie offered 10 Songs for sale to the general public. (Id. ¶ 25.) The songbook contained printed instructions about how to order additional copies of the book: "For more copies of this song book: Woody Guthrie, 3520 Mermaid Avenue, Brooklyn, 24, New York." (Id.)

Although 10 Songs was never registered with the United States Copyright Office ("Copyright Office"), the front cover of 10 Songs contained the following copyright notice: "Copyright 1945 W. Guthrie." (Id. ¶ 26.) The melody and lyrics for This Land, together with the notation "Words and music by W. Woody Guthrie," were printed on page 8 of 10 Songs as follows:

THIS LAND IS YOUR LAND, THIS LAND IS MY LAND
FROM THE REDWOOD FOREST TO THE NEW YORK ISLAND
THE CANADIAN MOUNTAIN, TO THE GULF STREAM WATERS
THIS LAND IS MADE FOR YOU AND ME.

AS I GO WALKING THIS RIBBON OF HIGHWAY
I SEE ABOVE ME THIS ENDLESS SKYWAY
AND ALL AROUND ME THE WIND KEEPS SAYING:
THIS LAND IS MADE FOR YOU AND ME.

I ROAM AND I RAMBLE AND I FOLLOW MY FOOTSTEPS
TILL I COME TO THE SANDS OF HER MINERAL DESERT
THE MIST IS LIFTING AND THE VOICE IS SAYING:

4

```
THIS LAND IS MADE FOR YOU AND ME.

WHERE THE WIND IS BLOWING I GO A STROLLING
THE WHEAT FIELD WAVING AND THE DUST A ROLLING
THE FOG IS LIFTING AND THE WIND IS SAYING:
THIS LAND IS MADE FOR YOU AND ME.

NOBODY LIVING CAN EVER STOP ME
AS I GO WALKING MY FREEDOM HIGHWAY
NOBODY LIVING CAN MAKE ME TURN BACK
THIS LAND IS MADE FOR YOU AND ME.
```

("1945 Lyrics")(Id. ¶ 27.)

In 1951, with permission from Guthrie, Folkways Records released a phonograph entitled "This Land is My Land: A Collection of American Folk Songs," which included a recording of Guthrie performing This Land. (Id. ¶ 30.) The lyrics were printed on the liner notes without any copyright notice as follows:

```
This land is your land, this land is my land.
From California to the New York island,
From the redwood forest to the Gulf Stream waters,
This land was made for you and me.

As I went walking that ribbon of highway,
I saw above me that endless skyway,
I saw below me that golden valley,
This land was made for you and me.

I roamed and rambled, and I followed my footsteps,
To the sparkling sands of her diamond deserts,
And all around me a voice was sounding,
This land was made for you and me.

When the sun come shining, then I was strolling,
And the wheat fields waving, and the dust clouds rolling,
A voice was chanting as the fog was lifting,
This land was made for you and me.
```

> This land is your land, this land is my land.
> From California to the New York island,
> From the redwood forest to the Gulf Stream waters,
> This land was made for you and me.
>
> When the sun come shining, and I was strolling,
> The wheat fields waving, the dust clouds rolling,
> A voice was chanting and the fog was lifting,
> This land was made for you and me.

("1951, 1956, & 1961 Lyrics") (Id. ¶ 31.)

On March 30, 1956, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EU432559) (the "1956 Application") for an unpublished work with the Copyright Office. (Id. ¶ 33.)[3] Ludlow is a wholly-owned subsidiary of Defendant TRO. (Id. ¶ 5.)

That same year – 1956 – Folkways Records, with permission from Ludlow or Guthrie, released a phonograph entitled "Bound for Glory: The Songs and Story of Woody Guthrie," which included a recording of This Land. (Id. ¶ 41.) The lyrics to the Song were printed on the liner notes without any copyright notice as follows:

> This land is your land, this land is my land,
> From California to the New York Island,
> From the redwood forest to the Gulf Stream waters,
> This land was made for you and me.
>
> As I went walking that ribbon of highway,
> I saw above me that endless skyway,

---

[3] Plaintiffs do not specify which lyrics and melody this "unpublished work" covered under Registration Number EU432559, nor do Plaintiffs explicitly state whether the 1956 Application was granted.

I saw below me that golden valley
This land was made for you and me.

I roamed and I rambled, and I followed my footsteps,
To the sparkling sands of her diamond deserts,
All around me a voice was sounding,
This land was made for you and me.

When the sun come shining, then I was strolling,
And the wheat fields waving, and the dust clouds rolling,
A voice was chanting as the fog was lifting,
This land was made for you and me.

This land is your land, this land is my land,
From California to the New York Island,
From Redwood Forest to the Gulf Stream Waters,
This land was made for you and me.

When the sun come shining, and I was strolling,
The wheat fields waving, the dust clouds rolling,
A voice was chanting and fog was lifting,
This land was made for you and me.

("1951, 1956, & 1961 Lyrics") (Id. ¶ 42.)

On December 15, 1958, Ludlow filed an Application for
Registration of a Claim to Copyright (Reg. No. EP126345) (the
"1958 Application") for a derivative work with the Copyright
Office. (Id. ¶ 37.)  The 1958 Application claimed a copyright in
"new matter" consisting only of a new piano accompaniment. (Id.
¶ 38.)[4]

In 1961, with permission from Ludlow or Guthrie, Folkways
Records re-released the 1951 phonograph record under the title
"This Land is My Land, Songs to Grow On, Vol. 3: American Work

---

[4] Plaintiffs do not include the new piano accompaniment in their Complaint.

Songs," which included the same recording of This Land as the 1951 phonograph record. (Id. ¶ 44.) The lyrics were printed in the liner notes without any copyright notice as follows:

> This land is your land, this land is my land.
> From California to the New York island,
> From the redwood forest to the Gulf Stream waters,
> This land was made for you and me.
>
> As I went walking that ribbon of highway,
> I saw above me that endless skyway,
> I saw below me that golden valley,
> This land was made for you and me.
>
> I roamed and rambled, and I followed my footsteps,
> To the sparkling sands of her diamond deserts,
> And all around me a voice was sounding,
> This land was made for you and me.
>
> When the sun come shining, then I was strolling,
> And the wheat fields waving, and the dust clouds rolling,
> A voice was chanting as the fog was lifting,
> This land was made for you and me.
>
> This land is your land, this land is my land.
> From California to the New York island,
> From the redwood forest to the Gulf Stream waters,
> This land was made for you and me.
>
> When the sun come shining, and I was strolling,
> The wheat fields waving, the dust clouds rolling,
> A voice was chanting and the fog was lifting,
> This land was made for you and me.

("1951, 1956, & 1961 Lyrics") (Id. ¶ 44.)

July 21, 1970, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EP276540) (the "1970 Application") for a published musical composition with the

Copyright Office. (<u>Id.</u> ¶ 46.) Reg. No. EP276540 covers only a new guitar arrangement and "added words." (<u>Id.</u> ¶ 47.)[5]

On May 3, 1972, Defendant Ludlow filed an Application for Registration of a Claim to Copyright (Reg. No. EP301279) (the "1972 Application") for a published musical composition with the Copyright Office. (<u>Id.</u> ¶ 50.) The 1972 Application claimed a copyright in only "some words" as "new matter." (<u>Id.</u> ¶ 52.) Plaintiffs assert that the words claimed as "new matter" were the following two verses:

> As I went walking I saw a sign there
> And on the sign it said "No Trespassing."
> But on the other side it didn't say nothing,
> That side was made for you and me.
>
> In the shadow of the steeple I saw my people
> By the Relief Office I seen my people
> As they stood there hungry, I stood there asking
> Is this land made for you and me?

(<u>Id.</u> ¶ 52.)[6]

In all four of Ludlow's Applications (1956, 1958, 1970, 1972), Ludlow identified the title of the song as "This Land is Your Land" and Guthrie as the author of the Song's words and music. (<u>Id.</u> ¶¶ 34, 38, 47, 51.) Ludlow did not state in any of the four Applications that the Song had been published

---

[5] Plaintiffs' Class Action Complaint does not include the guitar arrangement or specify which words were added in Reg. No. EP276540.

[6] Plaintiffs' assertion is based on the renewal of Reg. No. EP301279 on July 10, 2000. The Court notes that these two verses are similar, but not identical, to the fourth and sixth verses of the 1940 Lyrics.

previously by Guthrie in 1945 or that the lyrics had been
published previously by Folkways Records in 1951. (<u>Id.</u> ¶ 35, 39,
48, 54.)[7]

According to Plaintiffs, Defendants claim they own the
exclusive copyright to This Land. (<u>Id.</u> ¶ 6.)[8] Plaintiff's
conclusion appears to be based at least in part on the fact that
Ludlow is listed as the owner of the copyright to This Land on
the website of non-party Harry Fox Agency.[9] (<u>Id.</u>) Additionally,
prior to this lawsuit, Defendants had asserted their exclusive
ownership in the copyright to This Land against non-party Jib
Jab Media, Inc. ("Jib Jab"). (<u>Id.</u> ¶ 14.) On July 23, 2004,
Ludlow's counsel wrote to Jib Jab's counsel regarding Jib Jab's
use of the Song. (<u>Id.</u>)  In that letter, Ludlow's counsel
asserted: "Ludlow is the exclusive copyright owner of the
classic folk song 'This Land is Your Land' written by the well-
known folk artist Woody Guthrie." (<u>Id.</u>) The letter also asserted
that Jib Jab's use of the Song's melody and "the well-known

---

[7] Although Plaintiffs do not explicitly state that the Copyright Office
granted each of Ludlow's four copyright applications in 1956, 1958, 1970, and
1972, Defendants do not dispute this fact.

[8] Defendants do not disclaim ownership of the copyright in the Song. (Defs.'
Mem. at 12, 13.) However, neither party has specified which lyrics are
covered by the disputed copyright.

[9] Non-party Harry Fox Agency is a provider of rights management, licensing,
and royalty services for the music industry. (Id. ¶ 6.)  Harry Fox Agency
licenses, collects, and distributes royalties on behalf of musical copyright
owners, and provides a variety of online tools to help music publishers
manage their catalogs. (Id.)

lyrics 'This land is your land, this land is my land' and 'From California to the New York Island'" infringed Ludlow's copyright. (Id.)

### iii. Plaintiffs' Use of the Song

Satorii is a band based in New York City. (Id. ¶ 56.) Saint-Amour is Satorii's drummer and Jerrra Blues is Satorii's lead singer. (Id.) On February 18, 2016, Satorii provided Defendants with a Notice of Intention to Obtain a Compulsory License. (Id. ¶ 58.) Satorii paid Defendants $45.50 for a mechanical license to produce and distribute 500 copies of the Song as a digital phonorecord. (Id.) Plaintiffs claim they did so involuntarily; Plaintiffs allege that they only entered into the mechanical license agreement and paid the $45.50 fee because Defendants had threatened to sue other users of the Song for copyright infringement in the past. (Id. ¶ 78.)

Plaintiffs recorded a version of the Song ("Version 1"), which is available for sale on iTunes and on other sites. (Id. ¶ 59.) Version 1 has the same melody as Guthrie's 1945 publication and includes the following lyrics:

> This land is your land, this land is my land
> From California to New York Island
> From Redwood Forest to Gulf Stream Waters
> This land was made for you and me
>
> As I was walking that ribbon of highway
> I saw above me that endless skyway

> I saw below me that golden valley
> This land was made for you and me
>
> I've roamed and rambled and I followed footsteps
> In the sparkling sands of her diamond deserts
> And all around me their voice was sounding
> This land was made for you and me
>
> Nobody living can ever stop me
> As I go walking my freedom highway
> Nobody living can make me turn back
> This land was made for you and me
>
> This land is your land, this land is my land
> From California to New York Island
> From Redwood Forest to Gulf Stream Waters
> This land was made for you and me

(Id. ¶ 60.)

Satorii also recorded a different version of the Song using a different melody but the same lyrics ("Version 2"). (Id. ¶ 61.) Plaintiffs believe that Version 2 does not qualify for a compulsory license because of the change in the Song's melody (Id.) Plaintiffs allege that they cannot risk releasing Version 2 without permission from Defendants to create a derivative work. (Id.) Because of Defendants' claim of copyright ownership in the Song, Plaintiffs could be subject to substantial statutory penalties, attorneys' fees, and costs if they were to release Version 2 without first obtaining a license to create a derivative work from Defendants. (Id.)

Additionally, Satorii wants to produce and release a music video of the Song ("Music Video"). (Id. ¶ 63.) Plaintiffs allege

that they cannot release the Music Video without first obtaining
a synchronization license from Defendants because doing so would
expose them to substantial penalties, attorneys' fees, and
costs. (Id.)

Plaintiffs filed this Class Action Complaint against
Defendants on June 14, 2016. (ECF No. 6.) In Count I, Plaintiffs
seek declaratory judgment under the Copyright Act that the Song
is in the public domain, or that Defendants' registrations only
cover a piano arrangement (1958 copyright for Reg. No.
EP126345), a guitar arrangement (1970 copyright for Reg. No.
EP276540), and two alternate verses (1972 copyright for Reg. No.
EP301279). (Id. ¶¶ 74-88.) In Count II, Plaintiffs seek an
injunction preventing Defendants' claim to ownership of
copyrights in the Song and restitution for licenses of the Song.
(Id. ¶¶ 89-93.) The Complaint also includes four state law
claims: deceptive acts and practices in violation of New York
General Business Law § 349 (Count III); breach of contract
(Count IV); money had and received (Count V); and rescission for
failure of consideration (Count VI). (Id. ¶¶ 94-123.)

On September 2, 2016, Defendants moved to dismiss
Plaintiffs' Complaint. (ECF No. 17.) In their Motion to Dismiss,
Defendants argue that the Class Action Complaint should be
dismissed in its entirety because Plaintiffs lack standing.

Furthermore, each of the state law claims should be dismissed as preempted by federal law.[10]

## II.   DISCUSSION

### a. Subject Matter Jurisdiction

#### i. Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." United States v. N.Y.C. Dep't of Hous., Pres. & Dev., No. 09 Civ. 6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012) (quoting Rhulen Agency, Inc. v. A.L. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

---

[10] In their Motion to Dismiss, Defendants also argue that Section 507(b) of the Copyright Act requires claims to be maintained within three years of the accrual of the claim. (Defs.' Mem. at 24-25.) Defendants do not argue that Plaintiffs' individual claims are barred by the Copyright Act - only that the claims of absent class members must be limited to three years. This statute of limitations argument is more properly addressed during class certification rather than at this motion to dismiss stage. Therefore, the Court declines to address this argument here.

ii. Standing Analysis

Plaintiffs' asserted basis for subject-matter jurisdiction is that they are entitled under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., to seek declaratory relief arising under the Copyright Act, 17 U.S.C. §§ 101 et seq., and supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. (Compl. ¶ 1.) Defendants allege that this Court lacks subject matter jurisdiction because Plaintiffs have not alleged an adequate basis for standing. (Defs.' Mem. at 6-14.) Defendants argue that there is no active case or controversy here because Plaintiffs have merely obtained a compulsory mechanical license and have not alleged any further contact with Defendants, much less a reasonable apprehension of a suit (or threatened suit) for copyright infringement. (Id.)

The Declaratory Judgement Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has stated that the DJA essentially subsumes Article III's case-or-controversy requirement, and the phrase "case of actual controversy" in the DJA refers to the type of "Cases" and "Controversies" that are

justiciable under Article III. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

> Basically, the question in each case is whether the facts
> alleged, under all circumstances, show that there is a
> substantial controversy, between parties having adverse
> legal interests, of sufficient immediacy and reality to
> warrant the issuance of a declaratory judgment.

Id. (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941)).

In MedImmune, the petitioner claimed it was not required to make licensing payments on a patent that it claimed was invalid. Nevertheless, the petitioner continued to make the payments, under protest, to avoid the threat of paying treble damages, attorneys' fees, and having its sales enjoined. Id. at 118. The Supreme Court found that an actual controversy existed, holding that "the requirements of a case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." MedImmune, 549 U.S. at 131 (2007). To have Article III standing, a plaintiff need not "destroy a large building, bet the farm, or . . . risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights." Id. at 134. See also Klinger v. Conan Doyle Estate, Ltd., 755

16

F.3d 496, 499 (7th Cir. 2014) (finding an actual controversy
existed and rejecting a ripeness challenge where author sought
declaratory judgement before his book was completed.)

Although the MedImmune Court rejected the requirement that
a plaintiff seeking declaratory judgment have a "reasonable
apprehension of imminent suit," id. at 132 n. 11., it did not
eliminate the requirement that the dispute be specific and real.
Id. at 131 ("The fact that royalties were being paid did not
make this a difference or dispute of a hypothetical or abstract
character."). See also Bruce Winston Gem Corp. v. Harry Winston,
Inc., No. 09 CIV 7352 JGK, 2010 WL 3629592, at *3 (S.D.N.Y.
Sept. 16, 2010) (After MedImmune, "[e]stablishing that the
plaintiff engaged in a course of conduct evidencing a definite
intent and apparent ability to commence use of the allegedly
infringing marks remains a necessary requirement for a valid
claim for declaratory judgment relief." (citation and internal
quotations marks omitted)).

Here, Plaintiffs paid Defendants $45.50 for a mechanical
license to produce and distribute a cover version of the Song.
(Compl. ¶ 58.) Additionally, Plaintiffs have recorded and wish
to release another version of the Song using a different melody
but the same lyrics. (Id. ¶ 61.) Plaintiffs allege (without
contradiction) that releasing Version 2 without a license to
create a derivative work from Defendants would expose them to

substantial penalties. (Id.) Plaintiffs also wish to produce and release their Music Video and allege (again, without contradiction) that doing so without a synchronization license from Defendants would expose them to the substantial penalties (Id. ¶ 62.)

Although there is currently no "reasonable apprehension of imminent suit" against Plaintiffs, it was Plaintiffs' own acts which "eliminate[d] the imminent threat of harm." MedImmune, 549 U.S. at 128. Therefore, the dispute here is not hypothetical or abstract in character. As in MedImmune, Plaintiffs paid the mechanical license fee "involuntarily." Additionally, in recording Version 2 and demonstrating a desire to produce and release the Music Video, Plaintiffs have shown they have the "intent and apparent ability necessary to commence use" of the disputed copyright. Bruce Winston Gem Corp, 2010 WL 3629592 at *4.

The cases that Defendants cite are inapposite. Defendants here have not disclaimed ownership of the copyright, nor have they entered into a covenant not to sue Plaintiffs. Cf. Already, LLC v. Nike, Inc., 568 U.S. 85 (2013) (defendant's unconditional and irrevocable covenant not to sue mooted plaintiff's action to have the defendant's trademark declared invalid); Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc., 890

18

F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (broad language of defendant's unconditional and irrevocable covenant not to sue eliminated the possibility of litigation.) Unlike in <u>Nike</u> and <u>Velvet Underground</u>, litigation over the Song is likely to commence if and when Plaintiffs release Version 2 or their Music Video without obtaining a license to the disputed copyright.[11] Therefore, Plaintiffs have standing to pursue their claims.

Finding that Plaintiffs have standing to bring their claims, the Court now addresses Defendants' argument that Plaintiffs' state law claims are preempted by federal law.

---

[11] In a suit for declaratory relief for a declaration of non-infringement, the burden of proving infringement remains with the licensee, even if that licensee is the nominal defendant. <u>Medtronic, Inc. v. Mirowski Family Ventures, LLC</u>, 571 U.S. 191, 194 (2014) ("when a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee."); 3 Nimmer on Copyright § 12.01 (2018) ("One imagines that the same considerations [in <u>Medtronic</u>] govern copyright claims."); <u>Marya v. Warner/Chappell Music, Inc.</u>, 131 F. Supp. 3d 975, 983–84 (C.D. Cal. 2015) (applying <u>Medtronic</u> to a similar declaratory judgment copyright non-infringement case and concluding that the defendants bear the burden of proof). Here, Defendants have artfully avoided stating whether, in their view, Plaintiffs would be infringing on their copyright if Plaintiffs were to release Version 2 or the Music Video. In doing so, Defendants seek to press their standing argument while preserving any copyright infringement claim they might have against Plaintiffs. Defendants cannot have it both ways. The burden is on Defendants to show they either do or do not possess the copyright to the Song. <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 88 (2013) (placing the burden on the (defendant) manufacturer to show it could not reasonably be expected to resume its enforcement efforts against the (plaintiff) competitor).

b. Preemption of State Claims

i. 12(b)(6) Legal Standard

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

20

provide the framework of a complaint, they must be supported
by factual allegations. When there are well-pleaded factual
allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement
to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must

accept as true all factual allegations set forth in the

complaint and draw all reasonable inferences in favor of the

plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508

(2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels &

Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

However, this principle is "inapplicable to legal conclusions,"

Iqbal, 556 U.S. at 678, which, like the complaint's "labels and

conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor

should a court "accept [as] true a legal conclusion couched as a

factual allegation." Id. at 555. In resolving a 12(b)(6) motion,

a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and

documents incorporated by reference in the complaint. DiFolco v.

MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

ii. Preemption of State Law Claims Analysis

Defendants' motion seeks dismissal of Plaintiffs' state law

claims as preempted by the Copyright Act. Those claims are for

deceptive acts and practices in violation of New York General

Business Law § 349 (Count III), breach of contract (Count IV), money had and received (Count V), and rescission for failure of consideration (Count VI).

There is a two prong test for a preemption analysis. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012). Section 301 of the Copyright Act preempts a state law claim if: "(i) the work at issue comes within the subject matter of copyright and (ii) the right being asserted is equivalent to any of the exclusive rights within the general scope of copyright." Id.

### 1. Subject Matter Requirement

The first prong – the subject matter requirement – is satisfied if "the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). The scope of the subject matter is intended to be broad, and "includes all works of a type covered by sections 102 and 103." Forest Park, 683 F.3d at 430.

The subject matter of the Plaintiffs' claims is the Song. The Song is a musical composition and as such a paradigmatic

work protected by the Copyright Act. 17 U.S.C. § 102(a)(2).

Plaintiffs here argue that their state law claims do not assert

any rights of the type protected by the Copyright Act. (Pls.'

Opp. at 14.) This argument fails. The subject matter prong of

the preemption test inquires only whether the work is of a type

protected by the Copyright Act. It is. "A work need . . . only

fit into one of the copyrightable categories in a broad sense."

Briarpatch, 373 F.3d at 305. The subject matter requirement is

met when the work "falls within the ambit of copyright

protection." Barclays Capital Inc. v. Theflyonthewall.com, Inc.,

650 F.3d 876, 892 (2d Cir. 2011). Because Plaintiffs are

challenging the validity of the copyrights in a song, which fits

into the copyrightable category of musical works, the subject

matter requirement is met.


### 2. General Scope Requirement

The second prong of the preemption analysis – the "general

scope requirement" - inquires whether the rights being asserted

through the state law claims are equivalent to a right protected

by the Copyright Act. Briarpatch, 373 F.3d at 305. "In other

words, the state law claim must involve acts of reproduction,

adaptation, performance, distribution or display." Id.

> [T]he state law claim must not include any extra elements
> that make it qualitatively different from a copyright
> infringement claim. To determine whether a claim is
> qualitatively different, we look at what the plaintiff
> seeks to protect, the theories in which the matter is
> thought to be protected and the rights sought to be
> enforced. Moreover, we take a restrictive view of what
> extra elements transform an otherwise equivalent claim into
> one that is qualitatively different from a copyright
> infringement claim. Awareness or intent, for instance, are
> not extra elements that make a state law claim
> qualitatively different.

Id. at 305-06. See also We Shall Overcome Foundation v. The

Richmond Organization, Inc., et. al, No. 16-cv-02725-DLC

(S.D.N.Y. Nov. 21, 2016) (slip op) ("WSOF").[12]

   a. Count III: New York General Business Law § 349

     In Count III, Plaintiffs assert a claim for deceptive acts

and practices in violation of N.Y. Gen. Bus. Law § 349 (Compl. ¶

94-113.) To assert a claim under GBL § 349, "a plaintiff must

allege that a defendant has engaged in (1) consumer-oriented

---

[12] Plaintiffs' state law claims in this Action are virtually identical to the
state law claims brought by the plaintiffs in We Shall Overcome Foundation v.
The Richmond Organization, Inc., et. al, No. 16-cv-02725-DLC (S.D.N.Y. Nov.
21, 2016) (slip op) ("WSOF"). Like the Plaintiffs here, the plaintiffs in
WSOF brought state law claims for alleged deceptive acts and practices under
New York Gen. Bus. Law ("GBL") § 349 (Count 3), Breach of Contract (Count 4),
Money Had and Received (Count 5), and Rescission (Count 6). As here,
plaintiffs in WSOF also brought a claim for a Declaratory Judgment regarding
the validity of Defendants' copyright in the song "We Shall Overcome" (Count
1), and a separate claim for Declaratory and Injunctive Relief, seeking to
prevent Defendants' claim to ownership of copyrights in the song and
restitution for licensees (Count 2). Plaintiffs in both cases are represented
by the same counsel, and the state law claims in both cases are substantively
the same.

conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

The Plaintiffs' GBL § 349 claim is preempted. The right being challenged through this claim is the very right protected by the Copyright Act – the right to restrict the performance and distribution of a copyrighted work. The Plaintiffs contend that the Defendants are deceiving the public by claiming to own a copyright to the melody and well-known lyrics of the Song. (Compl. ¶ 98-99.) Such a claim is not qualitatively different than the Plaintiffs' request for a declaration that the Defendants have no valid copyright. Accordingly, this claim is preempted as one that seeks to vindicate a right equivalent to the exclusive rights protected by the Copyright Act. <u>See</u> <u>WSOF</u> at 29-03 (N.Y. Gen. Bus. Law § 349 claim preempted).


b. Count VI: Breach of Contract

In Count IV, Plaintiffs assert a claim for breach of contract. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F.3d 793, 799 (2d

Cir. 2011). A contract claim may escape preemption if it seeks to vindicate rights, such as a promise to pay, that are qualitatively different from those included in the Copyright Act. See, e.g., Forest Park Pictures, 683 F.3d at 433-34. On the other hand, where the right asserted hinges essentially on a determination of whether the rights protected by the Copyright Act exist, the breach of contract claim is preempted. See 1 Nimmer on Copyright § 1.01[B][1](a) (contract claims alleging "nothing other than derogation of rights under copyright" are preempted).

The Plaintiffs' contract claim is preempted. The Plaintiffs allege nothing more than that the Defendants breached their contracts with the Plaintiffs because the Defendants "implicitly represented and warranted that they own the copyrights to the Song as licensed therein." (Compl. ¶ 115.) The claims that there was a failure of consideration and a breach of promise both rely on the alleged misrepresentation that the Defendants have a copyright. Accordingly, the breach of contract claim in this case simply reframes the single question presented in this litigation, that is, whether the Defendants' copyright is valid. See WSOF at 30-31 (breach of contract claim preempted).

c. Count V: Money Had And Received

In Count V, Plaintiffs assert a claim for money had and received by Defendants which in equity belongs to Plaintiffs. The elements of the claim "money had and received" are: "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Middle E. Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (citation omitted). "A cause of action for money had and received is one of quasi-contract." Melcher v. Apollo Med. Fund Mgmt. LLC, 959 N.Y.S.2d 133, 142 (1st Dep't 2013). Claims in quasi-contract or unjust enrichment in which the plaintiff "need not allege the existence of an actual agreement between the parties [are] not materially different from a claim for copyright infringement." Forest Park Pictures, 683 F.3d at 432; see also 1 Nimmer on Copyright § 1.01[B][1](g) ("[A] state law cause of action for unjust enrichment or quasi-contract should be regarded as an equivalent right and hence, pre-empted insofar as it applies to copyright subject matter.").

The Plaintiffs' claim for money had and received is preempted by the Copyright Act. The acts through which the Defendants received money belonging to the Plaintiffs are only

27

unjust if the Defendants do not own the relevant portions of a
copyright. This claim's element of "enrichment," therefore, does
not create a qualitatively different claim than a claim that the
Defendants do not possess a copyright. See Briarpatch, 373 F.3d
at 306 (unjust enrichment claim preempted); WSOF at 28-29 (money
had and received claim preempted).


        d. Count VI: Rescission

     The final state law claim is the claim for rescission. "The
equitable remedy of rescission is to be invoked only when there
is lacking complete and adequate remedy at law and where the
status quo may be substantially restored." Sokolow, Dunaud,
Mercadier & Carreras, LLP v. Lacher, 747 N.Y.S.2d 441, 446 (App.
Div. 1st Dep't 2000) (citation omitted). "In order to justify
the intervention of equity to rescind a contract, a party must
allege fraud in the inducement of the contract; failure of
consideration; an inability to perform the contract after it is
made; or a breach in the contract which substantially defeats
the purpose thereof." Babylon Associates v. Suffolk Cty., 475
N.Y.S.2d 869, 874 (App. Div. 2d Dep't 1984) (per curiam). The
effect of rescission "is to put the parties back in the same
position they were in prior to the making of the contract.
Holdeen v. Rinaldo, 281 N.Y.S.2d 657, 661 (App. Div. 3d. Dep't

1967). "Rescission is an extraordinary remedy, appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 143 (2d Cir. 2000) (citation omitted).

The Plaintiffs' claim for rescission is preempted, for the reasons already explained in connection with the Plaintiffs' breach of contract claim. The claim for rescission is based entirely on the allegation that there was a failure of consideration because the Defendants have no valid copyright in the Song. See WSOF at 31-32 (rescission claim preempted).

### III. CONCLUSION

For the reasons described above, Defendants' Motion to Dismiss the Complaint is GRANTED in part, and DENIED in part. Each of the state law claims is DISMISSED WITH PREJUDICE on the ground that they are preempted. Defendants are to answer the remaining copyright claims of the Complaint within 30 days of the date of this Order.

SO ORDERED.


Dated: March 27, 2019

New York, NY


Deborah A. Batts
United States District Judge

30