**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JAMES SAINT-AMOUR and ALENA
IVLEVA a/k/a JERRRA BLUES, doing
business as SATORII, on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

      v.

THE RICHMOND ORGANIZATION, INC.
(TRO INC.) and LUDLOW MUSIC, INC.,

                 Defendants.

**C.A. No. 16-cv-04464-DAB**

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' RENEWED MOTION TO DISMISS

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Mark C. Rifkin
rifkin@whafh.com
Randall S. Newman
newman@whafh.com
Gloria K. Melwani
melwani@whafh.com
270 Madison Ave.
10th Floor
New York, NY 10016
(212) 545-4600

*Attorneys for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

<u>**PAGE(S)**</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION ..................................................................................................... 1

II.  LEGAL ARGUMENT ............................................................................................... 2

    A.   The Covenant Does Not Resolve Plaintiffs' State Law Claims ............................. 3

    B.   The Covenant Does Not Resolve Plaintiffs' Statutory Claim for Attorneys' Fees and Expenses ......................................................................................................... 4

    C.   The Covenant is an Unlawful Attempt to Pick Off Plaintiffs as Class Representatives ...................................................................................................... 6

    D.   Other Class Members Should be Substituted as Class Representatives ............... 10

III. CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)..............................................................................11, 12

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
    532 U.S. 598 (2001).................................................................................................5

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994).......................................................................................9

*Deposit Guaranty Nat'l Bank v. Roper*,
    445 U.S. 326 (1980).............................................................................................7, 8

*Dow Jones & Co. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002).................................................................2, 3

*Eckert v. Equitable Life Assur. Soc'y of the United States*,
    227 F.R.D. 60 (E.D.N.Y. 2005)..........................................................................9, 10

*Garcia v. Yonkers Sch. Dist.*,
    561 F.3d 97 (2d Cir. 2009).......................................................................................5

*Geismann v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018)..................................................................................4, 5

*Genesis HealthCare Corp. v. Symczyk*,
    569 U.S. 66 (2013)...................................................................................................8

*Gerstein v. Pugh*,
    420 U.S. 103 (1975).................................................................................................9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016).............................................................................................6

*Klein v. Qlik Techs., Inc.*,
    906 F.3d 215 (2d Cir. 2018).........................................................................8, 11, 12

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).................................................................................................3

*Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*,
    No. 05-cv-5390,
    2005 U.S. Dist. LEXIS 26695 (S.D.N.Y. Nov. 1, 2005)........................................5

*Sosna v. Iowa*,
  419 U.S. 393 (1974)...................................................................................8, 9

*Swan v. Stoneman,*
  635 F.2d 97 (2d Cir. 1980)........................................................................9

*United States v. Sanchez-Gomez*,
  138 S. Ct. 1532 (2018).............................................................................8, 9

*We Shall Overcome Found. v. The Richmond Org., Inc.*,
  No. 16-cv-2725(DLC),
  2018 U.S. Dist. LEXIS 5918 (S.D.N.Y. Jan. 12, 2018)............................3, 4

## STATUTES AND RULES

Fed. R. Civ. P.,
  23...............................................................................................6, 7, 8, 10
  54(b)...........................................................................................4

Copyright Act...............................................................................2, 5, 6
  17 U.S.C. § 505.........................................................................2, 5

Plaintiffs James Saint-Amour and Alena Ivleva a/k/a Jerra Blues, d/b/a Satorii, by and through their undersigned attorneys, hereby submit this Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss (Doc. No. 29).

## I.  INTRODUCTION

On June 14, 2016, Plaintiffs filed a class action complaint (the "Complaint") against Defendants The Richmond Organization, Inc. ("TRO"), and Ludlow Music, Inc. ("Ludlow"), who have claimed to own the exclusive copyright to the musical composition *This Land is Your Land* ("*This Land*" or the "Song") for six decades. Compl. ¶ 6. Plaintiffs brought suit on their own behalf and on behalf of all others similarly situated (the "Class") to recover damages from Defendants for those who were compelled to pay a licensing fee for the Song and to obtain declaratory and injunctive relief ending Defendants' bogus copyright claim.

On September 2, 2016, Defendants moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for lack of subject-matter jurisdiction and for failure to state a claim. Doc. Nos. 17-18. On March 27, 2019, the Court granted in part and denied in part Defendants' motion to dismiss and ordered Defendants to answer the Complaint by April 26, 2019. Doc. No. 28 at 30. On that date, in lieu of an answer, Defendants again moved to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), relying upon a Covenant Not to Sue and *Gratis* Non-Exclusive License (the "Covenant") which they created on April 23, 2019.

The Covenant purports to grant Plaintiffs an unconditional and irrevocable covenant not to sue or make any claim or demand against them or their predecessors, successors, related parties, and assigns for infringement of any statutory or common law copyright in the Song. Doc. No. 30-1 at 2. However, the Covenant does not "constitute an admission by any Owner as to the scope or interpretation of, the infringement of, the validity of, or the enforceability of, any

1

copyright" to the Song. *Id.* at 2-3. Nor does the Covenant purport to address or resolve any of Plaintiffs' state law claims. Moreover, the Covenant does not provide any attorneys' fees or expenses to Plaintiffs. In addition, the Covenant provides no monetary, injunctive, or equitable relief to the absent Class members whom Plaintiffs seek to represent in this case.

Defendants' renewed motion to dismiss for lack of subject-matter jurisdiction must be denied for three reasons. *First*, the Court's decision granting Defendants' prior motion to dismiss Plaintiffs' four state law claims on the basis of preemption remains subject to appellate review and, therefore, they remain a live controversy between the parties. The Covenant does not purport to resolve or moot any of those claims. *Second*, because the Covenant does not provide any attorneys' fees or expenses to Plaintiffs, it does not provide complete relief to Plaintiffs on their individual federal claims, which expressly include a statutory claim for attorneys' fees and expenses under the fee-shifting provisions of the Copyright Act, 17 U.S.C. § 505. And *third*, because the Covenant does not determine the validity or enforceability of the copyright and provides no relief whatsoever to the hundreds or thousands of absent Class members whom Plaintiffs seek to represent, it is an unlawful attempt to "pick off" Plaintiffs as the representatives of the Class before the Court has considered whether to certify the Class.

For these three reasons, explained more fully below, Defendants' renewed motion to dismiss for lack of subject-matter jurisdiction should be denied and Defendants should be ordered to answer the Complaint forthwith so that Plaintiffs may proceed with discovery and class certification without further delay.

## II.    <u>LEGAL ARGUMENT</u>

There is no special standing requirement for a claim under the Declaratory Judgment Act: the jurisdiction threshold "is coextensive with the analysis applicable to the 'case or controversy' standard embodied in Article III of the United States Constitution." *Dow Jones & Co. v.*

*Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002). The standing requirement limits jurisdiction to "real conflicts so as to preclude the courts from gratuitously rendering advisory opinions." *Id*.

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007), the Supreme Court discussed the "case or controversy" standing requirement under the Declaratory Judgment Act. The Supreme Court emphasized there is no bright line between cases that satisfy the requirement and those that do not. The only standing requirement under that controlling decision is that the "'controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . .  It must be a real and substantial controversy . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id*. at 138 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). MedImmune paid royalties to Genentech "under protest" in order to avoid potential liability for patent infringement – exactly as Plaintiffs did here – and thus ***never infringed Genentech's patent***. In reversing the Ninth Circuit's holding that there was no standing, the Supreme Court explained that MedImmune did not need to infringe the patent or break its license agreement as a condition to seeking declaratory relief.  *MedImmune*, 549 U.S. at 128-29 (plaintiff not required "to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced").

### A.    <u>The Covenant Does Not Resolve Plaintiffs' State Law Claims</u>

As Judge Cote recently held in *We Shall Overcome Found. v. The Richmond Org., Inc.*, No. 16-cv-2725(DLC), 2018 U.S. Dist. LEXIS 5918 (S.D.N.Y. Jan. 12, 2018):

> Under *Novella v. Westchester Cty.*, 661 F.3d 128, 149-150 & nn.23-24 (2d Cir. 2011), and the case cited therein, *Air Line Pilots Ass'n Int'l v. UAL Corp.*, 897 F.2d 1394, 1397 (7th Cir. 1990) (Posner, J.), obtaining an order according complete relief on the basis of one claim or legal theory does not thereby moot a plaintiff's standing to pursue ***other grounds for that same relief***, at least until that

3

relief is memorialized in a final judgment.

*Id.* at *2 (emphasis added).

Here, this Court granted in part and denied in part Defendants' first motion to dismiss, dismissing Plaintiffs' state law claims for deceptive acts and practices under New York General Business Law § 349 (Count III); breach of contract (Count IV); money had and received (Count V); and rescission for failure of consideration (Count VI). Doc. No. 128 at 13. Because the Court adjudicated fewer than all claims between the parties, but did ***not*** direct the entry of final judgment as to any of the dismissed claims, its decision was interlocutory and not yet ripe for appellate review. *See* Fed. R. Civ. P. 54(b) ("court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay").

By its express terms, the Covenant purports to resolve only federal or state ***copyright*** claims. It does not purport to resolve any of Plaintiffs' dismissed state law claims, which did not sound in copyright. Thus, Plaintiffs' rights under those state statutory and common laws are still ripe for appellate review. Following the sound reasoning in *We Shall Overcome* and *Novella*, the Covenant does not extinguish the entire dispute between Plaintiffs and Defendants. Therefore, the Covenant does not extinguish the Court's subject-matter jurisdiction.

### B. The Covenant Does Not Resolve Plaintiffs' Statutory Claim for Attorneys' Fees and Expenses

A lawsuit becomes moot only "when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation.'" *Geismann v. ZocDoc, Inc*., 909 F.3d 534, 541 (2d Cir. 2018) (emphasis in original) (quoting *Chen v. Allstate Ins. Co*., 819 F.3d 1136, 1144 (9th Cir. 2016)). Thus, a case is moot "'only when it is ***impossible*** for a court to grant ***any effectual relief whatever*** to the prevailing party.'" *Id*. at 542 (emphasis added) (quoting *Knox v.*

*Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). That is not the case here.

The Copyright Act authorizes the Court to "allow the recovery of full costs by or against any party . . . [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A "prevailing party" is "one who has favorably effected a 'material alteration of the legal relationship'" between the parties. *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). *See also Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05-cv-5390, 2005 U.S. Dist. LEXIS 26695, at *2 (S.D.N.Y. Nov. 1, 2005) (applying *Buckhannon* test under the Copyright Act).

The Covenant, which unconditionally and irrevocably prohibits Defendants from ever suing or making any claim or demand against Plaintiffs or their predecessors, successors, related parties, and assigns for infringement of any statutory or common law copyright in the Song, undeniably materially altered the legal relationship between the parties. Defendants created and delivered the Covenant only ***after*** the Court denied their motion to dismiss Plaintiffs' copyright claims, and they did so to avoid adjudication of Plaintiffs' remaining declaratory and injunctive relief claims. *See* Doc. 30-1 at 2. Thus, by virtue of the Covenant, which Plaintiffs obtained through their litigation efforts, they are "prevailing parties" for purposes of the Copyright Act.

As prevailing parties in this copyright dispute, Plaintiffs are entitled to seek attorneys' fees and expenses under Section 505 of the Copyright Act. The Covenant is silent with respect to such fees and expenses, and does not provide for payment thereof. Thus, the Covenant fails to resolve Plaintiffs' claim for statutory attorneys' fees and expenses. Plaintiffs have not received ***all*** of the relief they could receive on their copyright claim if they were to proceed with further litigation. *Cf. ZocDoc*, 909 F.3d at 541. For this additional reason, the Covenant does not

5

extinguish the entire dispute between the parties and does not extinguish the Court's subject-matter jurisdiction.

### C.    The Covenant is an Unlawful Attempt to Pick Off Plaintiffs as Class Representatives

To be sure, this case has much less to do with Plaintiffs' individual claim for monetary damages – they paid only $45.50 for a compulsory license to use the Song – and far more to do with determining the invalidity or unenforceability of Defendants' bogus copyright claims to *This Land* as a matter of law and with returning money to the hundreds or thousands of absent Class members who likewise were forced to pay unearned licensing fees to Defendants. Thus, after unsuccessfully moving to dismiss Plaintiffs' copyright claims, Defendants eagerly refunded the sum of $45.50 to Plaintiffs and granted them and their predecessors, successors, related parties, and assigns an unconditional and irrevocable free license to use the Song in perpetuity to avoid the genuine threat of having the Court invalidate their copyright and awarding millions of dollars in damages against them.

Defendants' gamesmanship conflicts with the purpose of Federal Rule of Civil Procedure 23 to allow the adjudication of identical claims on behalf of multiple parties in a single proceeding. It conflicts as well with the purpose of the Copyright Act, which is "to encourage the production of original literary, artistic, and musical expression for the good of the public" by "striking a balance between [the statute's] two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994)). As the Supreme Court explained in *Kirtsaeng*, lawsuits such as this, which promote both purposes of the Copyright Act, are to be encouraged. 136 S. Ct. at 1986. Defendants' latest gambit does the exact opposite.

6

In *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980), the Supreme Court identified four considerations that are implicated when a defendant tries to derail a class action by mooting the named plaintiff's individual claim:

> First is the interest of the named plaintiffs: their personal stake in the substantive controversy and their related right as litigants in a federal court to employ in appropriate circumstances the procedural device of a Rule 23 class action to pursue their individual claims. A separate consideration, distinct from their private interests, is the responsibility of named plaintiffs to represent the collective interests of the putative class. Two other interests are implicated: the rights of putative class members as potential intervenors, and the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it.

In that case, following the named plaintiffs' unsuccessful motion for leave to appeal the district court's denial of their motion for class certification, the defendant offered judgment to both plaintiffs for the maximum amount they each could have recovered (including pre-judgment interest and all taxable costs). *Id*. at 329.

In holding that the defendant's offer of judgment to the named plaintiffs did not moot their individual claims, the Supreme Court reasoned as follows:

> To deny the right to appeal simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Roper*, 445 U.S. at 339.[1] The same reasoning applies here.

---

[1] As Defendants have done with the Covenant here, the defendant in *Roper* forced the plaintiffs to settle by offering a judgment to each of them. 445 U.S. at 332-33. The Supreme Court noted, when a defendant attempts "to moot a class action by forced settlement, the district court is not powerless. . . . [I]t may require that putative class members receive some sort of notice and an opportunity to intervene within the appeal period. Rule 23 (d)(2). The availability of such

Importantly, the Supreme Court recognized in *Roper* that a class action offers "substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise." 445 U.S. at 338. Of particular relevance here, one of those advantages is the plaintiff's ability to "shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id*. at 336.

More importantly, the "[n]amed plaintiffs in class litigation represent not just – or even primarily – themselves, but also those sufficiently similarly situated that Rule 23 enables judicial recognition of their shared interest. . . . It is well established that [the absent class members'] interest in the outcome should not be ignored when circumstances deprive the party that represents them of her interest." *Klein v. Qlik Techs., Inc*., 906 F.3d 215, 222 (2d Cir. 2018) (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)). Thus, it is important for the Court to protect not just Plaintiffs' right to pursue the full extent of their individual claims (*see* Section B above), but also the interests of absent Class members in obtaining the class-wide relief that Plaintiffs seek on their behalf in the litigation.[2]

A certified class "'acquires a legal status separate from the interest asserted by the named plaintiff." *Sanchez-Gomez*, 138 S.Ct. at 1538 (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013), and *Sosna v. Iowa*, 419 U.S. 393, 399 (1974)). Because a class has an independent existence, the Supreme Court held in *Sosna* that once a class is certified, a "'live

---

measures could be a significant deterrent to the deliberate mooting of class actions." *Id*. at 356.

[2] Courts have devised any number of ways to protect the interests of absent class members. For example, "'[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons' that would deprive them of standing if present at the outset of litigation 'is a common and normally an unexceptionable . . . feature of class action litigation . . . in the federal courts.'" *Klein*, 906 F.3d at 222 (citations omitted). If the Court concludes that Plaintiffs' claims are moot here, it should permit substitution of one or more unnamed Class members as named plaintiffs to take up the litigation for the Class. *See* Section D below.

controversy may continue to exist'" for the class even after the named plaintiff's claim becomes moot "based on the ongoing interests of the remaining unnamed class members." *Sanchez-Gomez*, 138 S. Ct. at 1538 (quoting *Sosna*, 419 U.S. at 399-402).

In *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975), the Supreme Court recognized that, in appropriate circumstances, the interests of absent class members may preserve the Court's subject-matter jurisdiction even if the named plaintiff's claims are entirely dismissed or disposed of ***before*** the class is certified. For example, moving for class certification preserves the controversy even if the motion is not ruled upon before the named plaintiff loses standing. *See*, *e.g.*, *Swan v. Stoneman,* 635 F.2d 97, 100-02 (2d Cir. 1980) (subject-matter jurisdiction retained after class certification motion filed despite plaintiff's death before a ruling on certification). When the motion for class certification has been filed, certification "relates back" to the filing of the complaint. *See Comer v. Cisneros,* 37 F.3d 775, 799 (2d Cir. 1994) (citing *County of Riverside v. McLaughlin,* 500 U.S. 44, 52 (1991), and *Sosna,* 419 U.S. at 402 n.11).

Likewise, "in situations where a plaintiff has not yet had a reasonable opportunity to file a motion for class certification, namely, where there has been no 'undue delay,' the court retains subject matter jurisdiction despite the plaintiff's failure to move for class certification" before his claims are mooted. *Eckert v. Equitable Life Assur. Soc'y of the United States*, 227 F.R.D. 60, 63 (E.D.N.Y. 2005) (citing *Weiss v. Regal Collections, et al.,* 385 F.3d 337, 348 (3d Cir. 2004); *Nasca v. GC Servs. Ltd. P'shp,* No. 01 Civ. 10127, 2002 U.S. Dist. LEXIS 16992, at *2 (S.D.N.Y. Sept. 12, 2002); *Schaake v. Risk Management Alternatives, Inc.,* 203 F.R.D. 108, 112 (S.D.N.Y. 2001) (case was not moot because settlement offer was made before plaintiff could reasonably move for certification)). Thus, "'so long as a justiciable controversy existed some time prior to class certification,' and there is no undue delay, the relation back doctrine serves to

preserve the action." *Eckert*, 227 F.R.D. at 63 (quoting *Crisci v. Shalala,* 169 F.R.D. 563, 567 (S.D.N.Y. 1996)).

Here, although the action has been pending for three years, Plaintiffs have been unable to move for class certification because there has been no Rule 16 pre-trial conference while Defendants' motion to dismiss the Complaint was pending. No discovery could be taken before the Rule 16 conference. Absent that discovery, Plaintiffs could not reasonably move for class certification on a sufficiently developed record to permit the Court to make the findings necessary to determine the motion. Certainly, during the time that Defendants' motion to dismiss was pending and while they were unable to conduct any discovery, Plaintiffs did not unduly delay moving for class certification.

Accordingly, to protect the important interests served by Rule 23, the relation back doctrine will serve to preserve the action once Plaintiffs move for class certification after a reasonable opportunity for them to conduct discovery.

### D.    Other Class Members Should be Substituted as Class Representatives

Notwithstanding the foregoing, if the Court decides it no longer has subject-matter jurisdiction over Plaintiffs' claims because of the Covenant, the Court should not dismiss the class action; rather, it should permit other members of the Class to be substituted as class representatives.

As explained in the accompanying Declaration of Randall S. Newman in Support of Plaintiffs' Cross-Motion to Substitute Parties ("Newman Decl."), since Plaintiffs commenced this class action on June 14, 2016, their counsel have been contacted by several members of the proposed Class who have expressed a desire to participate in the litigation as a lead plaintiff. Newman Decl., ¶ 3. Those other Class members – who claims are ***not affected by the***

*Covenant*[3] – are ready, willing, and able to serve as class representatives and should be substituted in as representatives of the Class. *Id*. ¶ 4. Thus, Defendants' argument does not apply to those Class members and the Court would have subject-matter jurisdiction over their claims.

To protect the important interests of absent class members in the outcome of a class action when circumstances deprive the party that represents them from continuing to do so – such as when the defendants in a class action pick off the named plaintiff – "'[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons' that would deprive them of standing if present at the outset of litigation 'is a common and normally an unexceptionable . . . feature of class action litigation . . . in the federal courts.'" *Klein*, 906 F.3d at 222 (quoting *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006); citing *Lierboe v. State Farm Mut. Auto. Ins. Co*., 350 F.3d 1018, 1023 (9th Cir. 2003), and *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976)).

As the Second Circuit held in *Klein*, "'Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.'" 906 F.3d at 226 (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)). In *Klein*, the Second Circuit vacated the district court's decision denying a similar motion to substitute a party when the named plaintiff in a derivative action lost standing to represent the company following a cash-out merger. *Id*. at 218.  The Second Circuit held that the mere change in parties "would alter none of the factual allegations of the complaint." *Id*. at 226. And the Second Circuit also found no unfairness to the defendants from allowing substitution of a new party, even though they

---

[3] By its express terms, the Covenant does not apply to any other Class members. The Covenant conveys rights only to Plaintiffs and their predecessors, successors, related parties, or assigns. Doc. No. 30-1 at 2. The Covenant does not authorize Plaintiffs to transfer their rights thereunder to any other Class members. In any event, Plaintiffs have not done so. *See* Newman Decl., ¶ 5.

would have a viable statute of limitations defense to any new claim. *Id.* at 226-27.

Importantly, the Second Circuit noted in *Klein* the importance of permitting substation of a party in representative litigation:

> we conclude that substituting Qlik here is "***necessary to avoid injustice***," . . . because a rule disallowing substitution in these circumstances would contravene the purpose of shareholder derivative suits.

906 F.3d at 227 (emphasis added) (quoting *Advanced Magnetics*, 106 F.3d at 20). In that regard, there is no practical difference between the purpose of shareholder derivative suits and class actions: both serve important purposes.[4]

Finally, the Court retains jurisdiction to consider a plaintiff's motion to substitute a new party even after it lost jurisdiction over the plaintiff's claim:

> When a representative plaintiff's ongoing stake in the outcome is at issue, a federal court maintains its jurisdiction at least long enough to determine whether the represented parties maintain an interest and whether a substitution could avoid mootness. So long as a proposed substitution does not "come[] long after the claims of the named plaintiff[] were dismissed" and does not alter the substance of the action, it should be considered as an alternative to dismissal.

*Klein*, 906 F.3d at 225 (quoting *Phillips*, 435 F.3d at 787). Thus, Plaintiffs' cross-motion for leave to substitute a new representative plaintiff is timely and within the Court's ongoing jurisdiction.

## III.   <u>CONCLUSION</u>

For all these foregoing reasons, the Court should deny Defendants' renewed motion to dismiss and direct Defendants to answer the Complaint forthwith. Alternatively, if the Court decides it no longer has subject-matter jurisdiction over Plaintiffs' claims, it should grant

---

[4] Indeed, *Advanced Magnetics*, which the Second Circuit cited in *Klein*, was not a derivative action; rather, it was an action under Section 10(b) of the Securities Exchange Act of 1934 which the plaintiff brought on its own behalf and as an assignee of some of its shareholders. *Advanced Magnetics*, 106 F.3d at 13.

Plaintiffs' cross-motion and permit other members of the Class to substitute in as class representatives within 30 days following entry of the Court's order adjudicating Defendants' motion to dismiss.

Dated:  May 10, 2019                              Respectfully submitted,

                                                 WOLF HALDENSTEIN ADLER
                                                 FREEMAN & HERZ LLP

                                By:     _s/ Mark C. Rifkin_____
                                        Mark C. Rifkin
                                        rifkin@whafh.com
                                        Randall S. Newman
                                        newman@whafh.com
                                        Gloria K. Melwani
                                        melwani@whafh.com
                                        270 Madison Ave.
                                        10th Floor
                                        New York, NY 10016
                                        (212) 545-4600

                                        *Attorneys for Plaintiffs and the Class*

804407

13